J-S08015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.J., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1377 WDA 2017 |

Appeal from the Order Dated August 3, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000023-2017

\*\*\*\*\*

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.J., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1378 WDA 2017 |

Appeal from the Order August 3, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000024-2017

\*\*\*\*\*

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.J., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1379 WDA 2017 |

Appeal from the Order August 3, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000025-2017

*****

| IN THE INTEREST OF: D.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: L.J., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1380 WDA 2017 |

Appeal from the Order August 3, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000026-2017

*****

| IN THE INTEREST OF: D.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: L.J., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1381 WDA 2017 |

Appeal from the Order Dated August 3, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000027-2017

*****

| IN THE INTEREST OF: D.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: L.J., NATURAL MOTHER | : | |
| | : | |
| | : | |

- 2 -

|   |   |   |
|---|---|---|
| | : | No. 1382 WDA 2017 |
| | : | |

Appeal from the Order Dated August 3, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000028-2017

\*\*\*\*\*

|   |   |   |
|---|---|---|
| IN THE INTEREST OF: D.J., A MINOR . | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.J., NATURAL MOTHER | : : : : : : : | |
| | : | No. 1383 WDA 2017 |

Appeal from the Order August 3, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-029-2017

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS\*, P.J.E.

MEMORANDUM BY LAZARUS, J.:              **FILED DECEMBER 21, 2018**

L.J. ("Mother") appeals from the trial court's orders involuntarily terminating her parental rights to her seven minor children, D.S. (born 10/2007), Devon J. (born 7/2008), Dejaun J. (born 9/2009), Deale J. (born 10/2010), Deylyn J. (born 8/2013), Devlin J. (born 9/2014), and Deneya J. (born 9/2016) (collectively, "Children").  After careful review, we affirm.

_____
\*   Former Justice specially assigned to the Superior Court.

- 3 -

The Allegheny County Office of Children, Youth and Families ("CYF") became involved with Mother[1] and Children in February 2011 amidst concerns of domestic violence in the home, lack of parental supervision, parental criminal activity, lack of appropriate medical care for Children, parental mental health issues, housing concerns, educational concerns and general parenting issues. In 2012, Mother was charged with endangering the welfare of a child when one of the children presented to the hospital with a two-week-old fractured elbow. Mother entered a guilty plea to the charge in November 2012, and the court sentenced her to 18 months of probation.

In September 2015, Children were removed from Mother's care when CYF became suspicious that they were being physically abused and that Mother had failed to implement a safety plan. The Children were adjudicated dependent on December 2, 2015; at that time, criminal charges of endangering the welfare of children and aggravated assault were pending against Mother due to injuries sustained by Children while in her care. A no-contact order was entered with regard to Mother and Children.[2]

---

[1] On August 3, 2017, D.S.'s Father, J.A., consented to her adoption and, in accordance with 23 Pa.C.S.A. § 2504, J.A.'s parental rights were voluntarily terminated. The father of Devon J. is unknown. D.J. is the Father to the remaining 5 children, Dejaun J., Deale J., Deylyn J., Devlin J., and Deneya J.
[2] Mother was ultimately convicted in May 2017 with regard to both criminal charges.

On February 21, 2017, CYF filed a petition to voluntarily terminate Mother's parental rights to Children pursuant to sections 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act.[3]   KidsVoice, a non-profit agency that advocates for children in juvenile court, had been appointed as guardian *ad litem* ("GAL") for Children in their dependency proceedings.  At a pre-hearing conference held via audiotape on June 9, 2017, KidsVoice Child Advocate, Jennifer McGarrity, Esquire, asked the court to appoint KidsVoice as counsel for each child in the termination proceedings.  N.T. Pre-Hearing Conference, 6/9/17, at 5.  Specifically, McGarrity stated:

> Since the last scheduled pre-hearing conference, that was continued[,] we have been able to meet with the [C]hildren [and t]alk to the [C]hildren who are verbal and able to have a conversation.  And based on the information that we have obtained, **we believe that the best and legal interest for each child aligns.**
>
> **We have not identified any conflict that would preclude us or prevent us from being appointed as counsel for these children in the [termination of parental rights proceedings].**  And as such, we would ask the Court to appoint us.

*Id.* at 5-6 (emphasis added).

Mother's counsel objected to KidsVoice's request to appoint the GAL as counsel in the termination proceedings, citing *In re:  Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), and alleging an inherent conflict existed due to KidsVoice's continued representation as GAL in the concurrent dependency

---

[3] 23 Pa.C.S.A. §§ 2101-2910.

proceedings. N.T. Pre-Hearing Conference, 6/9/17, at 7. Specifically, Mother argued that a determination of what is the best interest for each of the Children must be made by the court. *Id.* at 6. After considering the parties' arguments, the court entered an order on June 9, 2017, appointing KidsVoice as counsel for Children in the termination proceedings. *Id.* at 10.

Following a two-day hearing held on July 11, 2017 and August 3, 2017, the trial court entered orders terminating Mother's parental rights to the oldest six children under sections 2511(a) (2), (8) and (b) of the Adoption Act and under sections 2511(a)(2) and (b) with regard to Mother's youngest child, Deneya J. Mother filed timely notices of appeal from the orders and has complied with the trial court's Pa.R.A.P. 1925(b) order. On appeal she presents the following issues for our consideration:

> (1) Did the trial court abuse its discretion and/or err as a matter of law in appointing KidsVoice as counsel for the Children when an apparent conflict between the legal interests of the Children and the interest of KidsVoice in representing the best interests of the Children in the underlying dependency proceedings was raised by [Mother]?
>
> (2) Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of the Child[ren] pursuant to 23 Pa.C.S.[A.] § 2511(b)?

Mother's Brief, at 18.

In her first issue, Mother contends that the trial court erred in appointing KidsVoice, who represents Children in the underlying dependency proceedings, as counsel for Children in the termination proceedings where there was an apparent conflict between the Children's legal and best interests.

Section 2313(a) of the Adoption Act, which mandates the appointment of counsel in contested involuntary termination proceedings, provides as follows:

> (a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents.** The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2213(a) (emphasis added). In *In re L.B.M.*, 161 A.3d 172 (Pa. 2017), our Supreme Court noted the distinction between a child's "legal" and "best" interests as follows:

> "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

*Id.* at 174 n.2 (quoting Pa.R.J.C.P. 1154 cmt.).

Recently in *In re: K.R.* & *In re: E.R.*, 2018 Pa. Super. LEXIS 1223 (Pa. Super. filed Dec. 10, 2018) ("*K.R.*"), our Court was faced with determining whether a trial court abused its discretion when it failed to appoint legal counsel for children in a contested termination proceeding pursuant to section 2313(a). The juvenile court had entered separate orders appointing KidsVoice as GAL in the children's dependency proceedings, specifically providing that "KidsVoice is hereby appointed [GAL] . . . to represent the legal interests and

best interest of Child in connection with any proceedings related to dependency[.]" *Id.* at \*24 (citations omitted). When termination proceedings commenced, KidsVoice, through its counsel, indicated that it was appearing as GAL for the children. *Id.* However, during cross-examination, counsel for KidsVoice indicated that she was the "attorney" for the children. *Id.* at \*24-25. At the conclusion of the termination proceeding, counsel indicated that the children expressed their wish to be adopted by their foster care family, and agreed that CYS had met its burden to terminate parental rights. *Id.* at 25.[4] Ultimately, our Court[5] affirmed the orphans' court's termination orders, finding no reversible error in the court's decision not to appoint counsel for the children's legal interests under section 2313, where "the Children were able to express their preferences to counsel, counsel expressed those preferences, as well as the Children's best interests to the orphans' court, and there was no conflict in th[o]se positions." *Id.* at \*39.

In reviewing the mother's claim on appeal in *K.R.*, our Court found that its holding was controlled by our Supreme Court's recent decision, *In re: T.S.*,

---

[4] Notably, our Court recognized that the orphans' court docket did not contain a separate order appointing counsel for the children for the termination proceedings. *Id.*

[5] Although not relevant to the issues raised in this appeal, the *K.R.* Court also found that the mother did not waive the issue of whether the orphans' court erred in appointing counsel for children in the termination proceedings when she raised it for the first time on appeal. *K.R.*, 2018 Pa. Super. LEXIS, at \*39. Additionally, the Court found that the mother, as well as any party, can raise the non-waivable issue of a child's legal representation. *Id.*

192 A.3d 1080 (Pa. 2018).  Likewise, we conclude that we are bound by the holding of *T.S.*, and, accordingly, affirm.

In *T.S.*, the Supreme Court considered whether this Court erred in failing to require the orphans' court to appoint a separate attorney for children, to represent their legal interests, in a contested termination of parental rights hearing as required by section 2313(a) and *L.B.M.*  *T.S.*, 192 A.3d at 1082. The Supreme Court in *T.S.* attempted to clarify the fractured holding in *L.B.M.* on the issue of whether an attorney-GAL representing a child's best interests can ever satisfy the mandate embodied in section 2313.  *Id.*  Specifically, the *T.S.* Court found that with regard to young, pre-verbal children (aged 2-3) whose preferred outcome is incapable of being ascertained, there can be no conflict between the child's legal and best interests under section 2313. *Id.* at 1092.  In such cases, section 2313's mandate that counsel be appointed "'to represent the child' is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings." *Id*.  Moreover, the Court found that where there is no conflict between an older, verbal child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.  *Id.*

In the present case, representatives of KidsVoice met with each of Mother's verbal Children and determined that the best and legal interests for each one was aligned and that no conflict existed that would preclude KidsVoice from being appointed as counsel for each of them in the termination

proceedings. Moreover, the trial judge in the instant case entered seven separate orders, all dated June 9, 2017, decreeing that KidsVoice be appointed as counsel for each child in the contested termination of parental rights proceedings. *See K.R.*, *supra* (requiring that in every contested TPR proceedings, courts place order on record formalizing appointment of counsel for child under section 2313(a)).

Here, it is clear that the parties and the trial court recognized the discrete functions of counsel and GALs in such cases and, critically, made a determination with regard to each child as to whether there was a conflict between his or her legal and best interests, while also recognizing that the preferred outcomes of the youngest children, Devlin J. and Deneya J., were incapable of being ascertained. *T.S.*, *supra* at 1092 (attorney-GAL who is present and representing child's best interests can properly fulfill the role of section 2313(a) counsel, "where . . . child at issue is too young to be able to express a preference as to the outcome of the proceedings.").

Where Mother's objection to KidsVoice's appointment as counsel in the termination proceedings was based on pure speculation that the situation posed the "risk" of a conflict of interest arising, we have no reason to disturb the court's order appointing KidsVoice as counsel in light of the holding of *T.S.* Accordingly, we conclude that there was no error in the court's appointment of KidsVoice as Children's counsel in the termination proceedings where, after having interviewed each verbal child to determine his and her wishes, no apparent conflict of legal and best interests existed.

Mother also contends that the trial court improperly terminated her parental rights under section 2511(b) of the Adoption Act, where it found that termination would best serve the needs and welfare of Children and where there was insufficient evidence to determine what emotional effect termination of Mother's parental rights would have on Children.[6]  Specifically, Mother argues that the court did not have any evidence before it to determine the *current* relationship among her and Children, independent of the 14-month no-contact period between the parties.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."  It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted).  We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law.  *In re A.R.*, 837 A.2d 560,

---

[6] We note that Mother concedes CYF clearly and convincingly established threshold grounds for termination under section 2511(a)(2).  *See* 23 Pa.C.S.A. § 2511(a)(2) ("The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.").

563 (Pa. Super. 2003).  Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.  ***Id.***

Under section 2511(b):

**§ 2511.  Grounds for involuntary termination**

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection[s] (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).  The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability."  ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012).  In ***In re E.M.***, 620 A.2d 481, 485 (Pa. 1993), our Supreme Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.  ***In re K.M.***, 53 A.3d at 791.  However, "common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."  ***In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013), ***citing In re K.M.***, 53 A.3d at 791.

- 12 -

Here, intangible factors such as the safety, needs, love, comfort, security and stability that Children enjoy with their foster families and the impact that continuing those beneficial relationships has upon their emotional and developmental well-being weigh in favor of termination under section 2511(b). Mother's prolonged lack of contact with Children due to the court's no-contact order is, undeniably, a result of her criminal behavior inflicted upon Children -- behavior that caused Children to suffer varying degrees of physical injuries.

At the termination hearing, Doctor Terry O'Hara, a licensed psychologist, testified that Mother was in no position to appropriately care for the Children's needs and welfare, N.T. Termination Hearing, 8/3/17, at 89, that Children would be at risk for exposure to significant psychological issues in Mother's care, *id.*, and that the last time he had observed and evaluated the three older Children interacting with Mother, he did not have "significant evidence at that time of significant attachment of security of any of the children with [M]other." *Id.* at 101. He further testified that "there wouldn't [have been] the opportunity to really strengthen the attachment, the security of attachment for the children with [M]other" since his evaluation. *Id.*

Viewing the record in its entirety, we conclude that terminating Mother's parental rights would serve Children's developmental, physical and emotional needs and welfare. Any unhealthy bonds or attachments Children have with Mother have caused them to suffer for far too long. Thus, the court did not abuse its discretion in involuntarily terminating Mother's parental rights to

Children under section 2511(b). **See In re T.S.M.**, 71 A.3d at 251, (termination under section 2511(b) proper where it best served children's needs and welfare to sever bond with mother permanently; children had been exposed to prolonged, unhealthy, "pathological" emotional bonds with Mother who had physically abused and neglected them).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2018